UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Pierre Larsen,

       Plaintiff,

v.                                                                                   Civil No. 10-4728 (JNE/SER)
                                                                                  ORDER

Gregg Alan Larsen and Downloaders 1-100,

       Defendants.

In November 2010, Pierre Larsen brought this action against Gregg Alan Larsen and 100 unidentified individuals.[1] Pierre Larsen asserted claims of production of child pornography in violation of 18 U.S.C. §§ 2251 and 2255 (2006 & Supp. IV 2010), sexual battery, and downloading and distributing child pornography in violation of 18 U.S.C. §§ 2252A and 2255 (2006 & Supp. IV 2010). In May 2011, Pierre Larsen moved for default judgment and applied for entry of Gregg Larsen's default. *See* Fed. R. Civ. P. 55. That month, the Clerk of Court entered Gregg Larsen's default.[2]

---

[1]     Pierre Larsen, who is not a minor, commenced the action using the name "John Doe 156." He neither sought nor obtained leave to proceed anonymously. *See* Fed. R. Civ. P. 10(a) (requiring the title of the complaint to "name all the parties"); *W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001) (stating that a party who "wishes to file a case anonymously or under a pseudonym . . . must first petition the district court for permission to do so"). After he disclosed his true name in open court at an evidentiary hearing, the Court ordered him to show cause why the caption should not be amended to reflect his true name. He responded by filing a Motion to Amend Complaint to Substitute Plaintiff's True Identity. Accordingly, the Court ordered the Clerk of Court to amend the caption to indicate that Plaintiff is Pierre Larsen.

       Pierre Larsen voluntarily dismissed the 100 downloaders.

[2]     Gregg Larsen is serving concurrent terms of imprisonment of twenty-five years and ten years for production of child pornography and possession of child pornography, respectively. Judgment in a Criminal Case, *United States v. Larsen*, Criminal No. 10-137 (D. Minn. Nov. 30, 2010), ECF No. 33.

1

In June 2011, the Court deferred consideration of Pierre Larsen's motion for default judgment pending an evidentiary hearing on the issue of damages. *See* Fed. R. Civ. P. 55(b)(2)(B) (stating that a "court may conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages"); *Stephenson v. El-Batrawi*, 524 F.3d 907, 916 (8th Cir. 2008) ("Once the amount of damages has been established, the court may enter judgment pursuant to the rule."); *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000) (stating that a default judgment cannot be entered until the amount of damages has been determined). The Court directed Pierre Larsen to schedule the evidentiary hearing and to submit detailed, proposed findings of fact and conclusions of law, as well as a supplemental memorandum of law, in support of his position on damages.

Before the evidentiary hearing, Pierre Larsen filed a Supplemental Memorandum in Support of Plaintiff's Damages, his affidavit, and his attorney's affidavit. In the supplemental memorandum, he stated that "the related nature of the criminal conduct caused [him] to suffer the same injuries from the combination of both of the acts" and that he distinguished "which criminal act, child pornography or sexual abuse, caused the injury described" where possible. Pierre Larsen sought an award of $200,000 for future medical and psychological treatment; $600,000 for past emotional distress and pain and suffering; $800,000 for future emotional distress and pain and suffering; and an unspecified amount for past and future wage loss. He stated that "[a] more detailed wage loss and loss of earning capacity analysis will be submitted to the Court under separate cover and at a later date." No such analysis was submitted. Pierre Larsen construed "actual damages" in § 2255 as a synonym for compensatory damages, including damages for "medical expenses, lost wages, past or future pain, and emotional distress." He asked for an award of $3 million in compensatory damages arising from Gregg

2

Larsen's production and distribution of pornography. He did not submit detailed, proposed findings and fact and conclusions of law in support of his position on damages.

In November 2011, the evidentiary hearing took place. Pierre Larsen and a psychologist, Dr. Susan Phipps-Yonas, testified. With the Court's permission, he submitted another memorandum of law after the hearing to support his request for an award of $600,000 for past emotional distress and $800,000 for future emotional distress.

"Upon default, the factual allegations of a complaint (except those relating to the amount of damages) are taken as true, but 'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (quoting 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2688 (3d ed. 1998)); *see Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) ("[W]hen a default judgment is entered, facts alleged in the complaint may not be later contested."). "[I]t is incumbent upon the district court to ensure that 'the unchallenged facts constitute a legitimate cause of action' prior to entering final judgment." *Marshall*, 616 F.3d at 852-53.

Briefly summarized, the Complaint alleges the following facts. Pierre Larsen was a foster child who was placed in the custody of, and later adopted by, Gregg Larsen. From approximately 1998 to 2007, while Pierre Larsen was at Gregg Larsen's home,[3] Gregg Larsen engaged in sexually explicit conduct with Pierre Larsen, created visual depictions of the sexually explicit conduct, uploaded the sexually explicit images to his computer, and distributed the

---

[3]   Pierre Larsen was born in 1988. He was therefore no longer a minor in 2006. *See* 18 U.S.C. § 2256(1) (2006) (defining "minor" as "any person under the age of eighteen years"). Pierre Larsen's affidavit and testimony suggest that he ran away from Gregg Larsen's home, never to return, in 2005 (Pierre Larsen ran away at the age of sixteen years, returned approximately two months later, and ran away for good after approximately two months).

3

sexually explicit images of Pierre Larsen over the Internet to various websites devoted to child pornography. Pierre Larsen was damaged as a result of the production, distribution, receipt, and viewing of the sexually explicit images.

The unchallenged facts in the Complaint legitimately state causes of action against Gregg Larsen. In Counts I and III, Pierre Larsen asserted claims under 18 U.S.C. §§ 2251, 2252A, and 2255. Section 2255 provides a civil remedy to those who, while minors, were victims of a violation of certain statutes, including §§ 2251 and 2252A, which, generally stated, prohibit production of child pornography and distribution of child pornography, respectively. Pierre Larsen's claim of sexual battery in Count II is a battery claim. *See Lickteig v. Kolar*, 782 N.W.2d 810, 816 (Minn. 2010) ("[W]e hold that Minnesota law does not recognize a separate cause of action for sexual abuse apart from common-law tort. [Plaintiff] has asserted a single claim—battery.").

A person who is entitled to recover under § 2255(a) "shall recover the actual damages such person sustains." 18 U.S.C. § 2255(a). Section 2255(a) states that the person "shall be deemed to have sustained damages of no less than $150,000 in value."[4] "Once a battery has been proved, compensatory damages may be awarded for humiliation and mental suffering." *Johnson v. Ramsey Cnty.*, 424 N.W.2d 800, 804 (Minn. Ct. App. 1988); *see Brett v. Watts*, 601 N.W.2d 199, 203 (Minn. Ct. App. 1999) ("Generally, a plaintiff bringing a civil action for an ordinary tort, such as battery, resulting in personal injury need not demonstrate an elevated level of emotional damage to proceed to trial and recover damages."); *Altman v. Knox Lumber Co.*, 381 N.W.2d 858, 863 (Minn. Ct. App. 1986) ("Establishment of a cause of action for . . . battery . . . entitles a plaintiff to compensation for . . . resulting mental disturbances . . . ."). An award of

---

[4] On July 27, 2006, an amendment to § 2255(a) increased the minimum amount of damages from $50,000 to $150,000.

damages for battery may also include expenses for medical treatment. *Rosenbloom v. Flygare*, 501 N.W.2d 597, 600 (Minn. 1993). An award of damages for pain and suffering is highly subjective and committed to the sound discretion of the finder of fact. *Sheriff v. Midwest Health Partners, P.C.*, 619 F.3d 923, 932 (8th Cir. 2010); *see Tuominen v. Waldholm*, 221 N.W.2d 709, 710 (Minn. 1974) ("There is no fixed standard by which damages for injuries can be measured.").

In the supplemental memorandum, Pierre Larsen cited a case decided by the Minnesota Court of Appeals, a verdict form from an Iowa state court case, and a copy of a newspaper article to support the proposition that courts have made significant damage awards to plaintiffs "[b]ecause of the life-long effects of child sexual abuse." The Court considers the materials cited below.

In *Mrozka v. Archdiocese of St. Paul & Minneapolis*, 482 N.W.2d 806 (Minn. Ct. App. 1992), a plaintiff sued religious organizations in a Minnesota district court, claiming that they negligently allowed a priest to sexually abuse him when he was a minor. 482 N.W.2d at 810. A jury awarded the plaintiff $855,000 in compensatory damages and $2.7 million in punitive damages. *Id.* The district court remitted the punitive damages to less than $190,000. *Id.* The plaintiff appealed the remittitur, and the religious organizations appealed the award of punitive damages against them. *Id.* The court of appeals affirmed. *Id.* at 814. The significance of *Mrozka*, a case in which the plaintiff sought punitive damages from religious organizations whose finances were necessarily considered in fashioning the award, to this case, in which the plaintiff is not seeking punitive damages from the defendant (who is presumably earning nominal prison wages and may be judgment proof), is elusive. No information about the compensatory damages awarded in *Mrozka*, other than the amount, appears in the decision.

The verdict form submitted by Pierre Larsen comes from a case tried at an undisclosed time in an Iowa district court.  The plaintiff apparently sued a Catholic diocese for negligently supervising a third-party.  The jury found that the diocese had negligently supervised the third-party and awarded the plaintiff approximately $1.5 million in damages for future medical expenses, past and future wage loss, past and future loss of function of mind, and past and future pain and suffering.  No other information about the case appears in the record.

Finally, Pierre Larsen submitted a page from a website that reproduced a newspaper article.  The article states that a jury—again, in an Iowa district court—awarded approximately $1.9 million to an individual who had been sexually abused decades ago by his uncle, who was also a Catholic priest at the time of the abuse.  The award consisted of $632,000 in punitive damages and $1.26 million "in other damages."  That this submission is worthless for present purposes requires no further comment.

Questioned at the evidentiary hearing about the utility of the Iowa cases to determining an award of damages in this case, Pierre Larsen's counsel responded that he represented the plaintiffs in the Iowa cases.  The Court does not doubt that he did, but his personal knowledge of those two cases does nothing to facilitate the determination of damages in this case.  He pays no heed to whether evidence of the verdicts in the two Iowa cases is admissible, and his reliance on them—out of the universe of similar cases—could lead to speculation that pursuit of this case is motivated, at least in part, by the hope of adding to a catalog of cases to be placed before finders of fact in future cases.  Such a course of action may be futile: "Most courts hold, or recognize, that it is improper for counsel in civil cases to call to the attention of the jury the amount of

verdicts in similar cases."[5] D.C. Barrett, Annotation, *Propriety and prejudicial effect of reference by counsel in civil case to amount of verdict in similar cases*, 15 A.L.R.3d 1144, 1146 (1967); *see Precopio v. City of Detroit, Dep't of Transp.*, 330 N.W.2d 802, 809 (Mich. 1982) ("Counsel in a non-jury case may not introduce evidence of analogous cases before the judge makes his findings of fact."); *Reynolds v. Great N. Ry. Co.*, 199 N.W. 108, 109 (Minn. 1924) (stating that counsel's argument to jury that referred to verdict in another case was "clearly misconduct," that "[t]here was no evidence which warranted the statement," that "[s]uch evidence could not be admitted," and that "[s]tating the award made by another jury was improper"); *Mrozka*, 482 N.W.2d at 813 ("The amount of other settlements and judgments and the nature and extent of media coverage were properly kept from the jury.").

Nevertheless, to the extent Pierre Larsen cited *Mrozka* and submitted the verdict form and the article to support the proposition that substantial awards of compensatory damages have been made to individuals who were victims of child sexual abuse, the Court accepts the proposition. But more modest awards have also been made. *See, e.g.*, *Father A v. Moran*, 469 N.W.2d 503, 505 (Minn. Ct. App. 1991). In *Father A*, the minor plaintiff was repeatedly sexually abused by

---

[5] When a court considers whether a damage award is excessive, the circumstances in which the court may consider awards in other cases appear to be limited. *See McCabe v. Parker*, 608 F.3d 1068, 1080 (8th Cir. 2010) ("Although we have said a damage comparison approach is often not helpful in claims involving noneconomic damages, we have never prohibited the practice. In some cases, where the facts are not easily comparable to the facts of other cases, the use of a damage comparison approach may be an abuse of discretion."); *Ahrenholz v. Hennepin Cnty.*, 295 N.W.2d 645, 649 (Minn. 1980) ("Generally, a verdict should not be justified or attacked by comparing it with verdicts approved or disapproved in other cases, or by referring to definite standards."); *Myers v. Hearth Techs., Inc.*, 621 N.W.2d 787, 793 (Minn. Ct. App. 2001) ("When considering whether a verdict is excessive, 'a comparison with previous verdicts is not justified because of the variations in facts and fluctuations in the economy.'" (quoting *Stenzel v. Bach*, 203 N.W.2d 819, 822 (Minn. 1973))); *Omlid v. Lee*, 391 N.W.2d 62, 64 (Minn. Ct. App. 1986) ("[A] verdict generally should not be justified or attacked by comparing it with verdicts from other cases.").

the defendant for several years, and she and her parents brought suit based on the defendant's batteries:

> During the years 1979 to 1985, when Minor A was between the ages of 6 and 12, appellant repeatedly sexually abused her. Appellant's batteries included touching Minor A's genitals and breasts, inserting his finger in her vagina, and taking nude photographs of her. Minor A estimated that during the course of these years, appellant touched her on the breasts over 200 times, and "in the private area between the legs" over 50 times.

*Id.* at 504. At trial, the minor plaintiff presented evidence of the effect that the sexual abuse had on her:

> Minor A suffered emotional and behavioral difficulties, as reflected in her mood swings, appetite fluctuations, and an occasionally severe sense of distress. At about the time of appellant's criminal sentencing, she attempted suicide by aspirin ingestion. Minor A received counseling to help resolve the emotional difficulties associated with appellant's abuse. However, despite these difficulties, Minor A was able to participate in school activities, maintain high grades, and work during the summer and while attending school. The record reflects that Minor A increased her working hours subsequent to the abuse.
>
> The record also reflects evidence of the effect that appellant's acts and the minor child's consequent problems had on the child's parents, Father and Mother A. Evidence was presented concerning the previous relationship between appellant and the parents. The record reflects that Minor A's relationship with Father A was strained after the disclosure of appellant's acts. The record also reflects that Father and Mother A were concerned about their daughter's difficulties arising from appellant's abuse, and therefore sought counseling for Minor A.

*Id.* at 505. "The jury determined that Minor A should receive $46,500 for medical expenses and counseling, and $120,000 for mental distress." *Id.* The jury also awarded punitive damages of $50,000, the district court allocated a portion of the punitive damages to the parents, and the court of appeals concluded that the minor plaintiff should receive the entire award of punitive damages. *Id.* at 507.

The Court described the materials submitted by Pierre Larsen, as well as the case of *Father A*, not because awards in other cases on similar facts determine the award that should be

made in this case—again, they do not—but rather to show that cases of child sexual abuse present no exception to the general rule that "[t]here is no fixed standard by which loss for injuries can be determined":

> A verdict cannot be set aside simply because this court may be of the opinion that it was not adequate. Because other juries have returned verdicts for larger amounts for similar injuries does not authorize us to interfere with the verdict. There is no fixed standard by which loss for injuries can be determined. Naturally the minds of reasonable men differ widely upon such a proposition.

*Brannan v. Shertzer*, 64 N.W.2d 755, 761 (Minn. 1954). Ultimately, "[t]he facts of each case must serve to measure damages." *Fifer v. Nelson*, 204 N.W.2d 422, 425 (Minn. 1973).

At the evidentiary hearing, Dr. Phipps-Yonas testified that Pierre Larsen should receive therapy for several years: first weekly, later bi-weekly, and then once per month. She testified that approximately 200 hours of therapy over the course of his adult life would not be unusual under the circumstances. She stated that the current hourly rate for experienced mental health professionals ranges from $120 to $200 per hour. She also stated that $40,000 in therapy is "pretty typical" under the circumstances. The Court accepts this testimony and finds that an award on the amount of $40,000 to Pierre Larsen for future psychological treatment is appropriate.

At the evidentiary hearing, the Court questioned whether Pierre Larsen had properly supported his request for a particular amount of damages for past and future emotional distress. A plaintiff's testimony, as well as testimony from a psychologist, may support a finding on the amount of damages:

> The jury found Miera liable for battery based on the unequivocal evidence that Miera kissed Johnson. Johnson's testimony was corroborated by his confidants Berg, Conlee and Seesel, each of whom testified that he related the events surrounding the kiss in contemporaneous conversation.
>
> The jury found that from December 1984 through March 1987 Johnson had suffered emotional distress and embarrassment as a result of the kiss and that

9

> the distress would continue until March 1989.  It awarded $50,000 in compensatory damages for past injury and $25,000 for future injury, totaling $75,000.
>
> . . . .
>
> Once a battery has been proved, compensatory damages may be awarded for humiliation and mental suffering.  Johnson's resulting emotional distress was documented throughout the trial.  He testified that the kiss made him feel sick and upset him so much that he related the incident to several friends.
>
> The jury's award reflects their assessment of his suffering, pursuant to Minn. Stat. § 546.22 (1986).  Just as the determination of credibility is a function of the jury, so too is the determination of damages.  The amount of damages sustained by a tort plaintiff is a fact question for the jury.
>
> Miera argues that there is no corroborated evidence of emotional distress resulting from the battery.  However, Johnson's confidants testified that he was very upset by the occurrence, and a psychologist who is an expert on victims of sexual harassment assessed Johnson after the incident.  She offered evidence of the emotional and psychological trauma which can result from such an incident and testified that Johnson had suffered such effects.  The jury considered this testimony and apparently believed the witnesses.  We hold that the evidence was sufficient to support the jury's verdict on liability and damages for battery.

*Johnson*, 424 N.W.2d at 804-05 (citations omitted); *see McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 957-58 (9th Cir. 2011) (summarizing testimony of the plaintiff and a clinical psychologist and stating "ample evidence" supported jury's award of $250,000 for actual damages due to emotional distress in case under Fair Debt Collection Practices Act); *Christensen v. Titan Distribution, Inc.*, 481 F.3d 1085, 1097 (8th Cir. 2007) (rejecting argument that testimony of the plaintiff and his wife was insufficient to sustain award of $65,000 in emotional distress damages in case brought under Americans with Disabilities Act).

Minnesota's jury instruction guides provide the following factors to consider in awarding damages for past or future bodily and mental harm: (1) the type, extent, and severity of the injuries; (2) how painful the injuries were or are; (3) the treatment and pain involved in that treatment; (4) the length of time the injury lasted or is likely to last; and (5) any other relevant

10

factors. 4A Minn. Dist. Judges Ass'n, *Minnesota Practice-Jury Instruction Guides, Civil*, CIVJIG 91.10, .25 (5th ed. 2006). Pierre Larsen had a traumatic childhood. At seven years of age, he was removed from his home and placed in foster care for a few years. At the age of ten years, he was placed in Gregg Larsen's home, and at the age of eleven years, he was adopted by Gregg Larsen. When Pierre Larsen was twelve or thirteen years old, Gregg Larsen started to sexually abuse him. The abuse continued over the course of several years. When he was fourteen years old, Pierre Larsen discovered a hidden camera in the bathroom. Gregg Larsen recorded Pierre Larsen in the bathroom, and Gregg Larsen placed videos of Pierre Larsen naked on the Internet. After running away from Gregg Larsen's home, Pierre Larsen was essentially homeless for a few years, was incarcerated, found and stayed with his mother, and met and stayed with his girlfriend. He earned his general equivalency diploma while incarcerated. When he was twenty years old, Pierre Larsen met with agents from the Federal Bureau of Investigation and identified himself in videos that Gregg Larsen had recorded of him in the bathroom. At the evidentiary hearing, Pierre Larsen testified about his anger, guilt, shame, difficulty trusting people, fear of encountering Gregg Larsen, and distress around cameras. Dr. Phipps-Yonas essentially corroborated his testimony. The Court accepts this testimony. Pierre Larsen sustained genuine emotional distress because of Gregg Larsen's conduct. The Court finds that an award of $150,000 for past emotional distress and $50,000 for future emotional distress is appropriate.

In short, the Court grants Pierre Larsen's motion for default judgment. The Court awards him $240,000: $40,000 for future psychological treatment; $150,000 for past emotional distress; and $50,000 for future emotional distress.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Pierre Larsen's Motion for Default Judgment [Docket No. 8] is GRANTED.

2. Judgment in the amount of $240,000 is entered in favor of Pierre Larsen and against Gregg Larsen.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 14, 2012

                                                    s/ Joan N. Ericksen
                                                    JOAN N. ERICKSEN
                                                    United States District Judge